MICHAEL BAILEY
United States Attorney
District of Arizona
Serra M. Tsethlikai
Assistant U.S. Attorney
CA State Bar No. 171177
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: serra.tsethlikai@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Francisco Dario Mora,<br>Defendant. | 19-MJ-6564-JGZ<br><br>GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO REVIEW DETENTION HEARING |

Now comes the United States of America, by and through its attorneys Michael Bailey, United States Attorney, and Serra M. Tsethlikai, Assistant U.S. Attorney, and hereby respectfully responds to defendant's Motion to Review Detention Hearing. The government requests this Court affirm the Magistrate Judge's Order of Detention of Mr. Mora as a danger to the community. The government requests that this Court also find, based on the evidence before the Magistrate Court, that the defendant also poses a serious risk of nonappearance.

Respectfully submitted this 11th day of December, 2019.

MICHEAL BAILEY
United States Attorney
District of Arizona

*s/Serra M. Tsethlikai*

Serra M. Tsethlikai
Assistant U.S. Attorney

**FACTS**

ATF began an investigation after ATF noticed that the defendants Francisco Dario Mora and Pedro Adan Sevilla had been purchasing several firearms. (Detention Hearing Transcript, (hereinafter "DH") dated 11/21/19, p. 6, lines 6-7). ATF noticed that the defendants were purchasing firearm calibers that are typically highly sought after by Mexican cartels including AK-47-style rifles or pistols, AR-15-style pistols, and 9mm caliber handguns. DH, p. 6, 7 -10, 24-25. ATF also noticed that there were a few recoveries of the firearms in Mexico a short time period after the defendants purchased the firearms. DH, p. 6, lines 10 – 12. The investigation revealed that the firearms were purchased in early June to early September of this year. DH, p. 6, lines 17 – 18.

During the investigation, ATF learned that three of the firearms, two purchased by Sevilla and one by Mora, have been recovered in Mexico. DH, p. 7, lines 5 – 7. On July 19, 2019, Sevilla and Mora each bought two AK-47 pistols from SnG Tactical in Tucson. DH, p. 1, lines 7 – 9. Twenty-seven (27) days later one of their firearms that were purchased that day were recovered in Guadalajara, Mexico. DH, p. 7, lines 9 – 11. Mexican law enforcement had recovered the two firearms in a residence in Mexico. DH, p. 7, lines 12 – 24. A third firearm, a .9mm caliber Taurus pistol purchased by Sevilla, was recovered in Mexico just forty (40) days after it had been purchased. DH, p. 8, lines 4 – 9.

As part of its investigation, ATF ran a wages check on both Mora and Sevilla from the Department of Economic Security. DH, p. 10, lines 2 – 7. ATF learned that neither

Mora nor Sevilla were legitimately earning enough money to purchase the number and caliber of firearms that they were purchasing. DH, p. 10, lines 11 – 16.

During the three month period (June through September 2019), Mora purchased 17 firearms and Sevilla purchased 19 firearms. DH, p. 10, lines 21 – 24. During its investigation, ATF gathered ATF Forms 4473 from federal licensed firearms dealers detailing the specific firearms, the makes and models, and the calibers of the firearms purchased. DH, p. 11, lines 9 – 24; p. 12, lines 5 – 7. The firearm dealers also provided the receipts for the firearm purchases. DH, p. 12, lines 3 – 4. The firearm dealers also informed ATF that Mora had purchased 10,000 rounds of ammunition and Sevilla had purchased 15,000 rounds of ammunition. DH, p. 12, lines 11 – 25; p. 13, lines 1 -4. In addition, Mora purchased 760 thirty (30)-round magazines for AK-47 and AR-15-type firearms. DH, p. 13, lines 5 – 20. The two defendants spent roughly $46,000 purchasing the various firearms, ammunition and magazines. DH, p. 21, lines 17 – 25. The ATF agent testified that based on the number of firearms and magazines purchased by the two defendants that the defendants were trafficking them. DH, p. 46, lines 13 – 20.

ATF learned that from June through September 2019, Mora had approximately 56 crossings. DH, p. 21, lines 4 – 10. During that same time period, Sevilla had about nine crossings. DH, p. 21, lines 12 – 15.

ATF then prepared a spreadsheet documenting the dates, purchaser, type and caliber of firearms purchased, the dollar amount spent, and the crossings of the defendants between the United States and Mexico. DH, p. 14, lines 1 – 4, 20 – 23; p. 15,

1 – 5. ATF used verifiable information for the data entered on the spreadsheet. DH, p. 15, lines 22 -24. Exhibit No. 1[1] was the spreadsheet created by ATF documenting the pattern of life for the two defendants from June through September 2019. *See* Attachment 1 which was admitted Exhibit No. 1.

After his arrest, Sevilla gave a *Mirandized* statement to agents. DH, p. 22, lines 3 – 7. Sevilla told agents that he was buying guns for Mora. DH, p. 22, line 9. Mora was paying him (Sevilla) $100 per gun and $100 per purchase of ammunition. DH, p. 22, lines 10 – 12. Sevilla stated that there were other individuals involved in the scheme to buy firearms and deliver them to Mexico. DH, p. 22, lines 16 – 19. Sevilla told agents that he went down into Mexico with Mora on at least five occasions and during those trips Sevilla would get dropped off, Mora would then take the firearms to a location, get money, and then Mr. Sevilla would get paid. DH, p. 27, lines 12 – 13, 20 – 24.

Danny Najera, who happened to be with Sevilla when he was arrested, told agents that he was buying guns on behalf of Mora and that he was also being paid by Mora. DH, p. 22, lines 19 – 25; p. 23, lines 1 – 4.

ATF agents had attempted to speak to Mora prior to his arrest at his residence. DH, p. 24, lines 20 – 24. Mora answered the door and met with the agents. DH, p. 25, lines 3 – 5. At that time, Mora had a handgun in his left hand. DH, p. 25, lines 5 – 9.

---

[1] Exhibit 1was admitted into evidence. DH, p. 37, line 19. Attachment 1 is Exhibit 1.

The agents were clearly marked as law enforcement officers. DH, p. 25, lines 10 – 12.

At the time of his arrest, Mora told agents repeatedly that his life was over and mentioned how much trouble he is in. DH, p. 25, lines 23 – 25; p. 26, lines 1 – 5. Videos found on Mora's cell phone showed two occasions where the defendant was driving around town with a handgun on his lap and other firearms. DH, p. 26, lines 16 – 20. On the date of his arrest, Mora challenged the ATF agent to meet him at the jiu jitsu gym and told the agent that he was going to hell. DH, p. 42, lines 24 – 25; p. 43, lines 1 – 3. Mora also told the agent he had a son in Mexico. DH, p. 43 line 22.

When Mora's mom was interviewed, she was very surprised to hear the dollar amount [of firearms purchased]. DH, p. 27, line 3. She indicated that for a two-month period, Mora went missing and would come home only occasionally. DH, p. 27, lines 3 – 6. When the mother asked where Mora had been, Mora replied that it was none of her business; that he's an adult. DH, p. 27, lines 6 – 8.

<u>Government's Argument for Detention</u>

The government noted that the defendant had weekly travel to Mexico. See Pretrial Services Report, (hereinafter "PSR"), dated 11/14/19, p. 2; DH, p. 52, lines 2 – 3. The defendant has a son in Mexico. DH, p. 52, lines 3 – 4. The mother has no control of her son. DH, p. 52, lines 4 – 9. Mora's Circle K job was only two weeks old. PSR, p. 3; DH, p. 52, lines 10 – 11. He recently used cocaine. PSR, p. 3; DH, p. 52, line11. The defendant had readily accessible cash in Mexico to use $46,000 to purchase firearms, not including what he was paid and what he paid Sevilla. DH, p. 52, lines 13 – 17. This

$46,000 was obtained in just three months. DH, p. 52, line 18. The defendant easily crosses back and forth between the United States and Mexico. DH, p. 52, lines 20 – 23. The defendant acknowledged to agents that he was looking at so much time [in jail]. DH, p. 52, line25; p. 53; line 1. The government believed these facts made him a flight risk. DH, p. 52, lines 22 – 23. Arguably, they make him a "serious flight risk."

In arguing that Mora was a danger to the community, the government noted that Mora was "arming an Army." DH, p. 53, line 10. 760 30-round magazines for AK-47s and AR-15s was arming an Army even if it was a small Army. DH, p. 53, lines 9 -10. The government noted that Mora was the leader and organizer with respect to recruiting Sevilla and Najera. DH, p. 53, lines 4 -5. Mora had paid Sevilla. DH, p. 53, lines 5 – 6. The defendant challenged the agent at the time of the search warrants. DH, p. 52, line 24. In addition, the defendant keeps firearms readily accessible while he is driving, at his house, and even when he opens the door. DH, p. 53, lines 13 – 15. These facts make him a danger to the community.

Magistrate Court's Findings for Detention

The Magistrate Court found that the government had established by clear and convincing evidence that Mora was a danger to the community. DH, p. 68, lines 2 – 7. In reaching this conclusion, the Magistrate Court relied on the facts that he had listed for detaining Sevilla related to the firearms trafficking. DH, p. 68. Lines 5 – 7. The Magistrate Court noted that the firearms were smuggled over a course of time. DH, p. 66, lines 12 – 13. The evidence demonstrated a pattern of conduct involving numerous

events where the firearms, ammunition and magazines were purchased in the United States and the clear inference that those items were then transported to Mexico based on the records showing inbound and outbound crossings by both defendants. DH, p. 66, lines 14 – 20. Evidence showed three of the firearms purchased by the defendants were found in Mexico. DH, p. 66, lines 22 – 24. The Magistrate Court noted that it could not draw a blind eye of what's happening in Mexico in that huge numbers of people were being murdered. DH, p. 67, lines 1 – 3. The Magistrate Court noted that the defendants were taking the firearms to Mexico and giving them to the people who are contributing to the violent activity in Mexico. DH, p. 67, lines 3 – 6. The Magistrate Court noted that the firearms were destined for use in a drug war in Mexico. DH, p. 67, lines 7 – 10.

In addressing Mr. Mora's detention, the Magistrate Court found that Mr. Mora directed others to purchase firearms and recruited others to purchase firearms, ammunition and magazines so that they could be exported from the United States into Mexico to supply drug cartels. DH, p. 68, lines 9 – 13. As three firearms were seized deep into Mexico, the firearms pose a real danger to the people living down there. DH, p. 68, lines 14 - 20. Again, the Magistrate Court noted there was a pattern of conduct, not a one-time event. DH, p. 68, lines 21 – 23. The pattern of conduct occurred over a three-month period. DH, p. 68, lines 23 – 25. The Magistrate Court found that the government established by clear and convincing evidence that Mora is a danger and ordered him detained. DH, p. 36, lines 1 – 3.

## MEMORANDUM OF POINTS AND AUTHORITIES

**LAW AND ARGUMENT**

**MAGISTRATE JUDGE'S ORDER OF DETENTION OF MR. MORA AS A DANGER SHOULD BE AFFIRMED**

A person facing trial is entitled to release under the least restrictive conditions or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(c); *United States v. Motamedi*, 767 F. 2d 1403, 1405 (9th Cir. 1985).

In certain cases, however, the government may move for detention. As the Supreme Court has stated, "The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *United States v. Salerno*, 481 U.S. 739, 747 (1987)(*citing* 18 U.S.C. § 3142(f)). The government may move for a detention hearing, based on dangerousness, only in cases that are listed under § 3142(f). A judicial officer shall hold a hearing to determine whether any condition or combination … will reasonably assure the appearance of such person as required and the safety of any other persons and the community. *Citing* 18 U.S.C. § 3142(f). The government may seek a detention hearing in a case that involves: (E) any felony that is not otherwise a crime of violence that … involves the possession or use of a firearm or destructive device, or any other dangerous weapon. 18 U.S.C. § 3142(f)(1)(E). On a motion for pretrial detention, the government bears the burden of showing that the defendant poses a flight risk by a preponderance of the evidence, and that the defendant is a danger to the community by clear and convincing evidence. *United States v. Motamedi*, 767 F.2d at 1406-07.

Here, the Magistrate Court, based on clear and convincing evidence, found that the offense charged involved the possession and use of firearms; that is, smuggling of firearms from the United States into Mexico and that based on the evidence presented during the evidentiary hearing, the defendant, by clear and convincing evidence, posed a risk of danger to others and the community; namely, that he was "involved in the purchase of

firearms and directing other to purchase firearms and recruiting others to purchase firearms, ammunition, and magazines so that they could be exported to Mexico to supply drug cartels." (Transcript of Detention Hearing, dated 11/21/19, p. 68, lines 9-13). This makes the defendant a danger to others and the Mexican community. Thus, the Magistrate Court's order of detention should be affirmed.

While the Magistrate Court limited his order of detention by finding the government had shown by clear and convincing evidence that the defendant was a danger to the community, the government maintains that the evidence presented at the evidentiary hearing demonstrates, at a minimum, there exists by a preponderance of the evidence, the defendant poses a "serious risk of nonappearance." The defendant has family in Mexico, including a son. He travels weekly to Mexico. He has contacts in Mexico that supplied him with over $46,000 in a short three-month period to purchase over 37 firearms, 25,000 rounds of ammunition and 760 30-round magazines for AK-47 and AR-15-type firearms. The defendant has a habit of daily marijuana use with recent use of cocaine. His Circle K job was only two weeks old. His mother noted he had been missing pretty much over a two-month period and when she inquired about his whereabouts, the defendant told her to "mind her own business." This is despite the fact he was supposedly living in his mother's house and she was supporting him at the time. In addition, at the time of his arrest, Mora repeatedly told agents that his life was over. Clearly, the defendant poses a serious risk of nonappearance.

The defendant is correct in stating that the Magistrate Court cannot use the weight of the evidence related to charged offenses to make a pretrial determination that the defendant is guilty; and then, use that pretrial determination as a basis for detention. However, there is no prohibition that the Magistrate Court cannot rely on that evidence to establish whether the defendant poses a risk of danger to the community. Here, the Magistrate Court did not opine that the evidence presented clearly demonstrated the defendant's guilt; rather, he opined that the evidence presented clearly demonstrated dangerousness. As the Magistrate Court noted, it cannot turn a "blind eye" to fact that the

defendant's course of conduct and actions demonstrated that he was supplying drug cartels in Mexico with firearms, ammunition and magazines to fuel a drug war. The Magistrate Court appropriately and justifiably used the evidence presented to support its finding, by clear and convincing evidence, that the defendant posed a risk of danger to the community.

**CONCLUSION**

The record and the information before the Magistrate Court supports, by clear and convincing evidence, the defendant poses a risk of danger to the community. The record also clearly supports a finding that there are no conditions or combination of conditions to reasonably assure the defendant's appearance in court as the defendant poses a "serious risk of nonappearance." The Order of Detention should be affirmed.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/Serra M. Tsethlikai*

Serra M. Tsethlikai
Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 11th day of December, 2019, to:

Ms. Greta M. Vietor, Esq.
Attorney for Francisco Dario Mora