**JON M. SANDS**
Federal Public Defender
**GRETA M. VIETOR**
State Bar No. 030485
407 W. Congress, Suite 501
Tucson, AZ 85701-1310
Telephone: (520) 879-7500
greta_vietor@fd.org
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Francisco Dario Mora,<br>Defendant. | CR19-3289-TUC-SHR (MSA)<br>**OBJECTIONS TO PRESENTENCE REPORT** |

Francisco Dario Mora will appear before this court for sentencing on March 29, 2021. The court should correct the Pre-Sentence Report (PSR) and delete the two-level adjustment for organizer, leader, or manager. (PSR at ¶38). As Mr. Mora did not act as an organizer, leader, manager, nor supervisor, the upward adjustment is unwarranted.

**<u>Factual Background</u>**

In his guilty plea on September 24, 2020, Mr. Mora plead guilty to conspiracy to smuggle goods from the United States; smuggling goods from the United States and making a false statement in the acquisition of a firearm (counts 1, 2 and 3 of the indictment). Specifically, that from June through September 2009, Mr. Mora, along with his co-defendant Pedro Adan Sevilla straw purchased forty (40) firearms including AK-

47-style firearms (7.62x39mm caliber) and AR-15-style firearms (5.56/.223 caliber), 25,000 rounds of various caliber ammunition, 760 thirty (30)-round magazines for AK-47-style and AR-15 firearms, one (1) 75-round drum magazine for an AK-47-style firearm and two (2) Glock 9 mm magazines in or around Tucson, Arizona. After purchasing them, they both would export/smuggle them from the United States into Mexico, either by personally smuggling them or by making arrangements with others to smuggle the firearms and munitions from the United States into Mexico. At the time, neither Mr. Mora nor Mr. Sevilla had a license to export firearms and munitions from the United States.

Mr. Mora admitted that on July 19, 2019 he went into SnG Tactical – SnG Arms, a federally licensed firearms dealer ("FFL"), to purchase two firearms including a Century Arms International, model: Micro Draco, 7.62x39mm caliber pistol and a Century Arms International, model: Draco, 7.62x39mm caliber pistol. When filling out ATF Form 4473, he checked the box "Yes" when answering the question "Are you the actual transferee/buyer of the firearm(s) listed on this form? **Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you.**" Mr. Mora knew this to be false as he was going to be paid for buying the two firearms for another person and intended to transfer the firearms to that person. Asserting that he was the actual buyer, was a material fact, which if true would have a natural tendency to influence SnG Tactical-SnG Arms into believing that he could legally acquire the two 7.62x39mm semi-

automatic pistols and allow him to lawfully purchase the firearms from SnG Tactical-SnG Arms.

The government has provided disclosure to the defense which includes all the firearms purchases made by both Mr. Mora and Mr. Sevilla at different FFL's, as well as Mr. Mora and Mr. Sevilla's outbound and inbound crossings across the U.S./Mexico border. There are several instances where Mr. Mora and Mr. Sevilla were together both making separate firearms purchases at the same location (7/2/19; 7/17/19; 7/19/19; 8/2/19; 8/4/19; 8/7/19; 8/17/19) and there were instances where each were alone making firearms purchases. In fact, the co-defendant Mr. Sevilla made firearms purchases on his own on the following dates: 11/24/18; 3/5/19; 7/5/19; 7/7/19; 7/22/19; 8/16/19; and 8/13/19. There were instances where Mr. Mora was crossing the border, either outbound or inbound, alone in a vehicle and Mr. Sevilla crossing separately minutes later as a pedestrian (7/3/19-7/4/19; 7/14/19; 7/19/19; 7/30/19-8/1/19) and there were times when Mr. Mora and Mr. Sevilla would cross together in a vehicle (7/20/19 inbound; 8/5/19 inbound; 8/13/19 inbound; and 8/24/19 outbound.)

**USSG §3B1.1**

The commentary to USSG §3B1.1 states a court may grant an upward departure for a defendant who did not organize, lead, manage, or supervise another participant, but who "nevertheless exercised management responsibility over the property assets, or activities of a criminal organization." USSG §3B1.1, comment (n2). Mr. Mora did not organize, lead, manage, nor supervise anyone. Mr. Mora, together with his co-defendant Mr. Sevilla,

would travel to Mexico to obtain funds from the cartel; return to the United States and purchase firearms with those funds, either separately or together. Mr. Mora and Mr. Sevilla constantly referred to each other as "primo" (cousin) or "cuz" in their text messages to each other. Furthermore, a close look at those text messages reveals that Mr. Mora and Mr. Sevilla were working together to make some extra cash and their conversations show they were close friends and working for someone they referred to as "Turi." *See* Exhibit A.[1]

Management responsibility would mean Mr. Mora decided where Mr. Sevilla would purchase firearms, where to store the firearms; where to deliver them to, who would deliver and other supervisory functions. This did not happen here – they both shared the same responsibilities. There is absolutely no evidence, other than any self-serving statements made by Mr. Sevilla, that Mr. Mora was acting in the capacity of leader/organizer. Although Mr. Mora may have, on occasion, provided money to Mr. Sevilla to make these purchases, Mr. Sevilla was also in contact with people in Mexico; he was selling drugs; making decisions and recruiting people. ATF Agent Creighton Brandt testified at the detention hearing on November 21, 2019 that "[o]ne individual that we spoke to yesterday was actually recruited by Mr. Sevilla." *See* Transcript of Detention Hearing, Nov. 21, 2019, p. 23, line 9.

Furthermore, a third individual, Mr. Najera-Armenta, who made a firearms purchase on July 10, 2019 in Phoenix, claims he was provided the money by Mr. Mora. But it

[1] A total of 148 pages of WhatsApp messages between Mr. Mora and Mr. Sevilla were disclosed by the government. The exhibit attached is only a sample of those conversations.

appears he only made one purchase. Even if Mr. Mora provided him with the money – there is no evidence that Mr. Mora was controlling or exhibiting any authority over Mr. Najera-Armenta.

Factors relevant to a sentencing court in determining whether a defendant was an organizer, leader, manager, or supervisor in any criminal activity to increase the offense level under USSG §3B1.1 includes exercise of decision-making authority, the nature of participation of the person who committed the offense, recruitment of accomplices, a claim of right to larger shares of fruits of crime, participation in planning or organizing the offense, the nature and scope of illegal activity, and control and authority exercised over others. *United States v. Lopez-Sandoval*, 146 F.3d 712, 717 (9th Cir. 1998); *United States v. Ramos*, 932 F.2nd 611 (7th Cir. 1991). In fact, the Ninth Circuit has held that "[w]ithout a showing that the defendant had control over others, even a defendant with an important role in the offense cannot be deemed a manager." *See Lopez-Sandoval*, 146 F.3d at 717 (9th Cir. 1998) citing *United States v. Hoac*, 990 F.2d 1099, 1110-11 (9th Cir. 1993). Once again, there is no evidence that demonstrates that Mr. Mora acted in this capacity. And although the Court may find that Mr. Mora's role in the offense was an important role, there is still insufficient evidence to support the enhancement for organizer/leader/manager.

**<u>Conclusion</u>**

Based on the foregoing, Mr. Mora respectfully asks the Court to remove the 2-level enhancement for organizer, leader or manager.

RESPECTFULLY SUBMITTED this 25th day of February 2021.

JON M. SANDS
Federal Public Defender

s/ Greta M. Vietor
GRETA M. VIETOR
Assistant Federal Public Defender